Reese, J.
delivered’the opinion of the court.
In 1813 Isaac Shelby departed this life, having duly made and published his last will and testament, and therein appointed John Shelby executor and testamentary guardian of his children, who made probate of his will and gave bond and was qualified; he paid all the debts of the testator in due time, as it is to be presumed, nothing to the contrary having been shown in the record of this case; placed the negroes and other property of the testator upon the plantation and in the possession of the wife and children of the testator, his devisees and legatees, pursuant to the directions of the will, and superintended them there; and had the farm carried oh during his life for five years, till 1818, when he died; and previously to his death made and duly published his last will and testament, and therein appointed Alfred M. Shelby executor, who gave bond and was duly qualified as such, but did not give bond or qualify as executor of the first estate, eo nomine. In 1836 the plaintiffs, of whom the latter was one of the legatees and devisees of Isaac Shelby, deceased, procured themselves to be appointed administrator and adminis-tratrix, cum testamento annexo, and brought this suit to recover a negro slave that had been placed upon the farm by the executor and testamentary guardian, and had remained there till 1820, when he was sold by two of the legatees to him from whom the defendant claims title. As the supposed legal right of the plaintiffs to maintain this action is founded, if at all, not upon the fact that one of them is the *186 legatee of Isaac Shelby, but merely upon the administration -upon the estate of the said Shelby de bonis non et cum testamento annexo, that right has been questioned in argument before us upon two grounds: First. It is contended that the administration was not rightfully granted Jo the plaintiffs, and that the court of probate could not legally constitute them personal representatives of Isaac Shelby, deceased, because John Shelby made a will and appointed an executor who took upon himself the office, and that thereby the law devolved upon him the execution of the will of the first testator. Unquestionably this would be so at common law; but the 3d section of the act of 1813, ch. 119, provides that all executors of every description shall, before they presume to enter upon the administration of any estate whatsoever, enter into bond and security,” &c. Unless, therefore, bond be given by the said executor for the administration of the first estate, he cannot presume to enter upon the duties of executor of that estate; and although since the act the devolution of the first office upon the second executorship exists in point of right if he shall comply with the requisitions of the act, yet his omission to do so must be regarded as a refusal and renunciation. Tf this be so, still it is insisted, secondly, that although the plaintiffs, as the personal representatives of Isaac Shelby, might collect debts due to the estate, if any there are, or pay the debts due by the testator, if any could have legal existence, or do any other act pointed out in the will pertaining to the office and duty of an executor merely, and not as a trustee, yet that they cannot maintain the present suit, because the negro in question, the debts of Isaac {Shelby having been paid, as is presumed in the absence of evidence to the contrary, was placed upon the farm with others by John Shelby, in pursuance of a personal trust and confidence by the testator reposed in him; that such act was an assent by him as to the entire bequests of the will as to the whole body of legatees, in the same manner as the placing a specific negro into the possession of an individual legatee would be an assent to such a specific legacy; and that the property continued thenceforth in the hands of John Shelby, not as executor merely, but as testamentary guardian *187 and trustee. And of this opinion are the court. The following is a copy of the will: “It is my will that my executor keep all my property of every description together on my plantation for the support of my wife and children, except such as he may deem sufficient to pay my just debts and fu* nerah expenses. And it is my will that my executor divide my property as near equal between my wife and ten children, namely, [here he enumerates them by name,] at the time that my youngest child comes of age. Also I wish him to divide to my respective children, as they may marry or come of full age at his discretion, reserving a sufficiency for the support and-education of my youngest one and wife, as he shall think most advisable, from time to time as such events of that kind may happen. It is further my will, that at the time my youngest child comes of age he shall divide my lands or sell them so that they can be equally divided amongst them. It is my will that my brother John Shelby be guardian of all my children till they come of full age, and he is hereby appointed sole executor of this my last will,” &c. It needs but to look at this will to be satisfied that, except as to the sale of so much of the property as would pay debts and funeral expenses, the powers and duties of John Shelby were as guardian and trustee. He took upon himself the execution of the guardianship and trust; he superintended and conducted the farm; he selected two of the negroes and gave them to one of the sons on his marriage. An administrator with the will annexed oould not meddle with the trust property; he could not take it from the farm; he could not superintend and conduct the farm; he could not educate the children; he could not advance them on their arrival at full age or marriage; he could not sell the lands and make an equal distribution of real and personal property. These are all matters connected with the guardianship and with the special and personal trusts and confidence, and these are the whole will.
The difficulty of obtaining clear views in the present case has probably arisen from confounding the ordinary duties of executor, which are properly dischargeable by an administrator de bonis non cum testamento a-nnexo, with those con *188 ferred on him by the same name but which belong to him as , , , „ , ° , guardian and trustee. Much of that difficulty would be obviated by considering these duties as conferred on ¿jfferen^ persons. Suppose in this case that John Shelby had been appointed executor and had been directed by the will to collect debts and to sell so much of the effects as would be sufficient to pay debts and funeral expenses, and then that he should place all the property upon the plantation; and after that, that A B, appointed testamentary guardian and trustee eo nomine,, had been directed to perform all the matters and things directed in the will. If, after the property had come into the hands of A B, the executor had died, and the plaintiffs had entered upon their present office, A B living, could the plaintiffs have meddled with him or the property? If then A B had died, would the circumstance have enlarged the powers of the plaintiffs? Certainly not: and yet in legal effect that is the case before the court. In the case supposed, after the death of A B a court of chancery and not a court of probate should have appointed a proper person to carry into effect the trusts of the will; and such should have been the course in the "present case. See Roper on Legacies, 559: 5 Yerger’s Rep. 220: 3 Devereax Rep. 417: 2 Plowden, 545: 2 Williams on Executors, 853, 848: 6 M. Ch. R. 151. The point in the statute limiting the grant of administration we" think was properly decided in favor of the plaintiffs. But upon the grounds above stated we feel it to be our duty to set aside the verdict and to reverse the judgment rendered thereon; and we remand the cause to the eir-puit court for further proceedings.